United States Court of Appeals
Fifth Circuit

**F I L E D**

August 29, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 05-30956

————————

LOUISIANA CRAWFISH PRODUCERS ASSOCIATION - WEST,

Plaintiff - Appellant,

versus

PETER J ROWAN, Colonel; UNITED STATES ARMY CORPS OF
ENGINEERS, New Orleans District; FRANCIS J HARVEY,
Secretary of the US Department of the Army in his official capacity as
Secretary of the Army,

Defendants - Appellees.

Appeal from the United States District Court
For the Western District of Louisiana

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Louisiana Crawfish Producers Association ("LCPA") appeals the district court's grant of

summary judgment to the United States Army Corps of Engineers ("the Corps") on claims arising

from LCPA's challenge under the National Environmental Policy Act ("NEPA") to the Corps's

Environmental Assessment ("EA") of a section of the Atchafalaya Basin.[1]

I

The Atchafalaya Basin is a flood control area in Louisiana, draining approximately 41 percent of the continental United States. In 1982, the Corps issued a Final Environmental Impact Statement ("FEIS") for the entire Basin. The overall goal of this FEIS was to ensure passage of water through the system, while restoring and maintaining the historical overflow conditions of the Basin. The FEIS divided the Basin into thirteen separate Management Units. Buffalo Cove, the subject of this litigation and one of the Management Units, was designated as a Pilot Management Unit, wherein experimentation could take place to develop techniques to maintain the water flow and restore the ecosystem. A series of pipelines run across Buffalo Cove, creating spoilbanks that capture and convey water and sediment and reduce the north-south flow. These spoilbanks also restrict public access.

From 1999 to 2003 the Corps conducted an EA on the Buffalo Cove Management Unit. The goal of the project, as described in the EA, was "to improve interior circulation within the swamp; remove barriers to facilitate north to south flow; provide input of oxygenated, low temperature river water; and prevent or manage sediment input into the interior swamps." These objectives would be accomplished through "a series of closures and sediment traps (to prevent sediment influx), constructed inputs for river water, and gaps placed in existing embankments." The Corps made the

---

[1] The LCPA filed its Notice of Appeal on July 28, 2005, which was after the district court's grant of summary judgment on June 16, 2005 but prior to the entry of the written order on August 31, 2005. Under Rule 4(a)(2), "[a] notice of appeal filed after the court announces a decision or order ) but before the entry of the judgment or order ) is treated as filed on the date of and after the entry." FED. R. APP. P. 4(a)(2). Therefore the premature filing of the Notice of Appeal is not fatal to our jurisdiction. *See FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 276 (1991); *Am. Totalisator v. Fair Grounds Corp.*, 3 F.3d 810, 812-13 (5th Cir. 1993).

project available for public review and comment on July 25, 2003. Out of one hundred thirty-four comments, thirty-two opposed the EA. On March 15, 2004, a Finding of No Significant Impact ("FONSI") was entered.

The LCPA is a not-for-profit organization of commercial crawfishermen. During the notice and comment period, the LCPA suggested as an alternative plan for Buffalo Cove that the Corps both open up the historical bayous and enforce the permit requirements for pipelines. This alternative was not addressed in the EA. The LCPA then brought suit in the district court, seeking an injunction of the project, arguing that the Corps had disregarded its suggested alternative and that the FONSI was in error. The Corps moved for summary judgment. The district court issued its ruling from the bench, granting summary judgment to the Corps and denying the LCPA's motion for summary judgment. The LCPA now appeals.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *City of Shoreacres v. Waterworth*, 420 F.3d 440, 445 (5th Cir. 2005). "NEPA-related decisions are accorded a considerable degree of deference . . . [and] courts are to uphold the agency's decision unless the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Spiller v. White*, 352 F.3d 235, 240 (5th Cir. 2003); 5 U.S.C. § 706(2)(A). "Under this highly deferential standard of review, a reviewing court has the least latitude in finding grounds for reversal." *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 678 (5th Cir. 1992) (citation omitted).

Our task is thus to determine whether the agency "adequately considered the values set forth in NEPA and the potential environmental effects of the project before reaching a decision on whether an environmental impact statement was necessary." *Sierra Club v. Hassell*, 636 F.2d 1095, 1097 (5th

Cir. 1981). The agency, and not the court, has the discretion to choose from among sources of evidence, and an agency may rely on its own experts, so long as they are qualified and express a reasonable opinion. *Sabine River Auth.*, 951 F.2d at 678.

II

NEPA requires "all agencies of the Federal Government . . . [to] include [an EIS] in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2). An EIS is not necessary when the federal action is not major or does not have a "significant impact on the environment." *Sabine River Auth.*, 951 F.2d at 677. To determine whether an EIS is necessary, an agency will perform an EA. *Sierra Club v. Espy*, 38 F.3d 792, 802 (5th Cir. 1994); 40 C.F.R. § 1508.9(a)(1) (defining an EA as a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact"). An EA is "a rough cut, low-budget environmental impact statement designed to show whether a full-fledged environmental impact statement)) which is very costly and time-consuming to prepare and has been the kiss of death to many a federal project)) is necessary." *Sabine River Auth.*, 951 F.2d at 677 (citation omitted). Thus, an EA will result in a finding that an EIS is necessary or in a FONSI, indicating that no further study of the environmental impact of the project is necessary. *Id.*

The Corps's EA for Buffalo Cove discussed three alternatives: a no-action plan, the original plan articulated in the 1982 EIS, and the plan ultimately adopted. During the record and comment period, the LCPA proposed an alternative to the proposed program, which focused on the reopening of historic bayous and the enforcement of the permits governing the laying down of pipelines through the areas. This alternative was never discussed in the final EA. On appeal, the LCPA argues that a

discussion and rejection of any reasonable alternative must be included in the EA and that because its proposed plan was reasonable, it should have been included in the Buffalo Cove EA. The Corps counters that this proposal was unreasonable and inconsistent with the goals of the Buffalo Cove project. Specifically, the Corps states that the proposal by the LCPA is both impracticable and would result in increased sedimentation, as opposed to the reduction in sedimentation intended by the project.

The LCPA has provided no caselaw that supports its contention that the Corps was *required* to consider and reject its proposed alternative in the EA.[2] Although the relevant regulation does mandate the discussion of alternatives, the regulation does not require that *all* proposed alternatives, no matter their merit, be discussed in the EA. *See* 40 C.F.R. § 1508.9(b) (stating that an EA "[s]hall include brief discussions of the need for the proposal, of alternatives . . ., of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted"). We have explained that "the range of alternatives that the [agency] must consider decreases as the environmental impact of the proposed action becomes less and less substantial." *Sierra Club*, 38 F.3d at 803; *see also Highway J Citizens Group v. Mineta*, 349 F.3d 938, 960 (7th Cir. 2003) ("When . . . an agency makes an informed decision that the environmental impact will be small . . . a less extensive

---

[2]     LCPA points to *Muckleshoot Indian Tribe v. United States Forest Serv.*, 177 F.3d 800 (9th Cir. 1999), noting that in that case, the Ninth Circuit held that by considering only a no-action alternative along with two "virtually identical alternatives," the agency had failed to consider a reasonable range of alternatives. *Id.* at 813.     In *Seacoast Anti-Pollution League v. Nuclear Regulatory Comm'n*, 598 F.2d 1221, 1230-31 (1st Cir. 1979), the court rejected an EIS that ignored an entire group of alternatives. Finally, in *Sierra Club v. Watkins*, 808 F.Supp. 852 (D.D.C. 1991), the district court determined that the EA did not adequately consider alternatives. *Id.* at 873. In these cases, however, the courts focused on the failure of the agency to consider an entire range of options without adequate explanation. These cases do not stand for the proposition that all proposed alternatives must be included in the final EA.

search [for alternatives] is required."). Furthermore, in the context of an EIS, we have made clear that "[s]ome reasonable limit to discussion of alternatives must be set." *Citizens for Mass Transit, Inc. v. Adams*, 630 F.2d 309, 318 (5th Cir. 1980).

In *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170 (5th Cir. 2000), the court affirmed a grant of summary judgment to the Corps, holding that the Corps had adequately considered a range of alternatives and had not been arbitrary and capricious in rejecting the plaintiff's proposal at a preliminary stage. *Id.* at 177. We held that the rejection of alternatives, "even those that could be considered to be viable and reasonable alternatives, after an appropriate evaluation" was not arbitrary and capricious. *Id.* Although this case arose in the context of an EIS, where the burden on the agency to consider reasonable alternatives is much heavier, the analysis is instructive. The court noted that the Corps had articulated reasons why the proposal was rejected in the early stages of analysis. *Id.* (reciting the reasons given by the Corps for rejecting the proposed alternative). Similarly, here, the Corps has briefed why the proposal was not accepted. The Corps explains that reopening the waterways suggested by the LCPA would result in "counterproductive sedimentation." The Corps notes further that the high water levels in the entire Atchafalaya River and Basin have changed, and therefore simply reopening historical bayous, without reverting back to the same historic high water levels, will result in excessive sedimentation. The administrative record also contains internal comments made on the letter proposal sent by the LCPA. Those comments indicate that the choice of where to introduce additional water flow into the Cove was carefully considered and that the Corps was concerned about the ability of the natural bayous to "scour [themselves]."

Therefore, we hold that the Corps was not arbitrary and capricious in choosing to reject the LCPA's proposed alternative.

III

The LCPA argues that the Finding of No Significant Impact was arbitrary and capricious. The LCPA asserts that the EA fails to take into account the cumulative impact of the Buffalo Cove project on the surrounding areas. The LCPA also argues that the EA is tiered to an out-of-date EIS, and also more generally that the Corps's proposal will result in "significant" effects to Buffalo Cove.

A

Cumulative impact is defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions. . . ." 40 C.F.R. § 1508.7. We have explained:

> [A] meaningful cumulative-effects study must identify: (1) the area in which effects of the proposed project will be felt; (2) the impacts that are expected in that area from the proposed project; (3) other actions))past, proposed, and reasonably foreseeable))that have had or are expected to have impacts in the same area; (4) the impacts or expected impacts from these other actions; and (5) the overall impact that can be expected if the individual impacts are allowed to accumulate."

*Fritiofson v. Alexander*, 772 F.2d 1225, 1236 (5th Cir. 1985), *overruled on other grounds by Sabine River Auth.*, 951 F.2d at 677.

In this case, the EA contained a lengthy discussion of the cumulative impacts of the project. The EA discussed past actions, including the effects of hurricane and floods, as well as the import of flood control measures and further construction in the area. As to present and planned actions, the cumulative impacts portion of the EA discussed tandem efforts undertaken in areas where the Corps cannot construct its own projects, as well as the effect of planned excavation and fill placement. This discussion adequately addresses the cumulative impact of the proposed action.

Contrary to the assertions of the LCPA, it is not fatal to the decision of the Corps that the

cumulative impact statement does not take into account future projects within the Atchafalaya Basin. The language of the relevant regulation limits the consideration of future actions to those that are "*reasonably* foreseeable." 40 C.F.R. § 1508.7 (emphasis added). We have defined this as "sufficiently likely to occur that a person of ordinary prudence would take it into account in reaching a decision." *City of Shoreacres*, 420 F.3d at 453. In *City of Shoreacres*, we determined that the Corps was not arbitrary and capricious when it did not consider the possible effects of a future plan to dredge and deepen a shipping channel. *Id.* at 453. The court reasoned that such a plan was too speculative and any plan to do so would take years to put into effect. *Id.* Similarly, in this case, the Buffalo Cove project is a pilot project, and thus, future projects in the Atchafalaya Basin have yet to be developed. The LCPA has not offered any evidence that these projects have indeed been formulated to the extent that their effects can be measured in the current EA. *See City of Shoreacres*, 420 F.3d at 453-54 (discussing the appellant's lack of "concrete analysis with respect to the likelihood" of future projects). Therefore, the cumulative impacts discussion in the EA is not inadequate and does not undermine the FONSI.

B

The LCPA then argues that the current EA is tiered to an out-of-date EIS.[3] An EIS must be supplemented if either there are "substantial changes" made to the proposed action or there are "significant new circumstances or information." 40 C.F.R. § 1502.9(c)(1)(i)-(ii). We have clearly stated that it is not necessary for "the Corps [to] update an EIS when portions of it become out-of-

---

[3] "[A]n EA may be tiered to an existing and broader EIS. 40 C.F.R. § 1508.28. 'Tiering refers to the coverage of general matters in broader environmental impact statements . . . with subsequent narrower statements or environmental analyses . . . incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.'" *Sierra Club*, 38 F.3d at 796. The EA at issue in this case is tiered to the 1982 EIS.

date." *Coker v. Skidmore*, 941 F.2d 1306, 1310 (5th Cir. 1991) (citing *Sierra Club v. U.S. Army Corps of Engineers*, 701 F.2d 1011, 1036 (2d Cir. 1983) ("mere passage of time rarely warrants an order to update the information to be considered by the agency")).  Therefore, this challenge to the FONSI must fail.

C

Finally, the LCPA argues that the record indicates that the Buffalo Cove project will result in significant environmental impacts.  The "significance" of the impact takes into account both "context" and "intensity."  *See* 40 C.F.R. § 1508.27.  The LCPA focuses exclusively on the intensity, or the "severity of impact" of the proposed project.  *See* 40 C.F.R. § 1508.27(b).  The regulations list ten factors that should be taken into account when evaluating intensity:

> (1) Impacts that may be both beneficial and adverse.  A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
> (2) The degree to which the proposed action affects public health or safety.
> (3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.
> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.
> (5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.
> (6) The degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration.
> (7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts.  Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment.  Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.
>
> (8) The degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources.
> (9) The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered

Species Act of 1973.

(10) Whether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment.

40 C.F.R. § 1508.27(b). The LCPA raises points as to factors 1, 3-7, and 9.

We have held that the factors are not "categorical rules that determine by themselves whether an impact is significant." *Spiller*, 352 F.3d at 243. In this case, the LCPA has not successfully argued that the factors tend to show that the impact of the project is so severe as to render it significant within the meaning of the regulation. As to the first factor, the LCPA attempts to characterize the Corps's statement that the degradation of the area necessitates timely intervention as an admission that the impact of the project is significant. The fact that the area is suffering environmental losses is part of the past cumulative impacts study but is not relevant to a finding of future impacts flowing from the project. Arguments as to factors five through seven are reiterations of prior arguments, as these discussions simply restate the arguments as to whether the EA need take into account the possibility of future projects in the Atchafalaya Basin. The LCPA's assertions that there has been inter-agency controversy over the project (factors 3 and 4), or that the presence of the black bear is significant (factor 9) are frivolous. The LCPA has produced no evidence that other agencies have resisted the Corps's proposed project. Furthermore, the LCPA admits that the United States Fish and Wildlife Service has stated that the project is "not likely to adversely affect" the black bear. As such, the LCPA has failed to demonstrate that the FONSI was in error.

Therefore, we hold that the Corps's Finding of No Significant Impact was not arbitrary or capricious.

IV

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the

Corps.[4]

---

[4]      The LCPA also argues that the district court applied the wrong standard of review. The district court did not enter a written memorandum of reasons but did state clearly during the hearing, "The burden in this matter is arbitrary and capricious, and based on the documents that have been presented to this Court, I cannot find that the Corps acted arbitrarily or capriciously." We need not decide this issue, as "[a]n appellate court can affirm the granting of summary judgment on any ground supported by the record, even where the district court granted summary judgment based upon erroneous reasoning." *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).