# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2025

Lyle W. Cayce
Clerk

No. 23-40555

———————

INDIGENOUS PEOPLES OF THE COASTAL BEND; KARANKAWA
KADLA TRIBE OF THE TEXAS GULF COAST; INGLESIDE ON THE
BAY COASTAL WATCH ASSOCIATION,

*Plaintiffs—Appellants*,

*versus*

UNITED STATES ARMY CORPS OF ENGINEERS; SCOTT A.
SPELLMON, *Lieutenant General*; CHRISTOPHER G. BECK, *Brigadier
General*; TIMOTHY R. VAIL, *Colonel*,

*Defendants—Appellees*,

ENBRIDGE INGLESIDE OIL TERMINAL, LLC, *formerly known as*
MODA INGLESIDE OIL TERMINAL, L.L.C.,

*Intervenor Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:21-CV-161

———————————————————————

Before JONES, WILLETT, and ENGELHARDT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

In 2015, President Obama signed into law bipartisan legislation
repealing the 40-year-old U.S. ban on crude oil exports. In the decade since,

the worldwide market for U.S. crude oil has expanded, as have efforts to thwart such expansion. This is an administrative challenge to a construction permit issued by the U.S. Army Corps of Engineers to expand operations at an oil export terminal on Texas's Gulf Coast. The Moda Ingleside Crude Export Terminal, located in Ingleside, Texas, is currently the largest export terminal by volume in North America, moving roughly 11.6 million barrels per day at the Port of Corpus Christi, the leading U.S. port for oil exports. Seeking to expand the Terminal further, the owner applied for a permit to dredge the seafloor and discharge the dredged material into U.S. waters. The Corps held a notice and comment period, conducted an Environmental Assessment in accordance with federal law, and approved the permit.

Two Native American tribes and a Coastal Bend environmental association sued to invalidate the permit, claiming the project would significantly damage seagrasses and wetlands and that the Corps violated the National Environmental Policy Act, the Clean Water Act, and the Administrative Procedure Act. In a comprehensive opinion, the district court denied summary judgment for Plaintiffs and granted summary judgment for the Corps, concluding that the Corps had adequately studied the environmental impacts of the proposed expansion.

We AFFIRM.

I

A

The Moda Ingleside Crude Export Terminal sits in the Corpus Christi Ship Channel. Crude oil flows to the Terminal via pipelines and is then shipped via vessels to customers abroad.

No. 23-40555

In January 2020, Enbridge Oil Terminal, LLC[1] applied to the Army Corps of Engineers for a permit under § 404 of the Clean Water Act and § 10 of the Rivers and Harbors Act to expand the Terminal's existing infrastructure. In particular, the plans included constructing five new barge docks, adding a 1,700-foot-diameter turning basin, and building a deep-water ship dock. These changes require dredging the surrounding sea floor and depositing the material into U.S. waters.

The Corps issued a public notice for the project in February 2020. Stakeholders, including two federal agencies, two Texas agencies, politicians, members of the general public, and two now-Plaintiffs (Ingleside on the Bay Coastal Watch Association and Indigenous Peoples of the Coastal Bend) submitted comments. The comment period closed in March 2020.

On April 2, 2021, the Corps issued an Environmental Assessment and Statement of Findings for the project. The 54-page EA contained a detailed description of the project, Enbridge's proposed minimization measures, and an overview of the existing conditions and history of the site. It defined the scope of the analysis for purposes of NEPA as including "structural improvements to the East Basin; the 491-foot bulkhead extension area along the shoreline; the structural improvements and 43-acre dredging footprint (including side slopes) in the West Basin; the Sunset Lake seagrass mitigation area, and 50-acre wooded habitat mitigation area along the eastern side of the facility to be preserved." The EA described the purpose of the project as to "[d]redge additional bay area and construct mooring structures to provide adequate water depth and area for the deeper-draft vessels that will be used to transport liquefied natural gas." The EA also catalogued public

_____

[1] Moda Ingleside Oil Terminal, LLC owned the terminal until Fall 2021, when it changed its name to Enbridge Ingleside Oil Terminal, LLC. This opinion refers to the Terminal owner as "Enbridge."

comments, along with the Corps's and Enbridge's responses. Next, the EA evaluated practicable alternatives. It then reviewed 21 public-interest factors, including climate change, and considered cumulative impacts of the project. Finally, the EA concluded with a finding that the project will not have a significant impact on the environment, so an environmental impact statement would not be required.

The Corps formally approved the project a month later.

B

Plaintiffs Ingleside on the Bay Coastal Watch Association, Indigenous Peoples of the Coastal Bend, and the Karankawa Kadla Tribe of the Texas Gulf Coast sued the Corps. Plaintiffs sought to invalidate the permit, alleging that the Corps violated NEPA, the Clean Water Act, and the Administrative Procedure Act. Enbridge later intervened as a defendant.

The parties filed cross-motions for summary judgment. Plaintiffs made seven arguments on the merits relevant to this appeal:

> 1) the Corps violated NEPA and the [CWA] by failing to take a hard look—or any look—at the risk of oil spills and other accidents;
>
> 2) the Corps violated NEPA and the CWA by failing to assess direct, cumulative and secondary impacts to seagrasses from current and expanded operations at the [Enbridge] terminal;
>
> 3) the Corps violated NEPA by failing to assess the impacts on the neighboring communities of noise and light pollution;
>
> 4) the Corps violated NEPA and the CWA by asserting without hard data or analysis that the benefits of the expansion outweigh the risks;
>
> 5) the Corps violated NEPA and the CWA by failing to analyze climate change and its impacts, even though the expansion can be expected to exacerbate climate change;

No. 23-40555

6) the Corps violated NEPA and the CWA by failing to document and consider cumulative impacts of past and reasonably foreseeable future activities; and

7) the [Terminal] expansions will have significant impacts on the environment, and an environmental impact statement is required.

In a comprehensive 77-page opinion, the district court found:

- Plaintiffs had associational standing.
- Plaintiffs waived their claims (1) that the Corps violated NEPA and the CWA by failing to discuss and independently evaluate the purpose and need for the project and by failing to analyze enough alternatives and (2) that the Corps violated the CWA by failing to minimize adverse impacts on seagrass and wetlands. Plaintiffs waived these claims by failing to raise them in briefing on summary judgment.
- Plaintiffs waived all claims under the CWA (except claims regarding public-interest review and cumulative impacts) by making only conclusory arguments.
- Plaintiffs forfeited all claims regarding an alleged increase in vessel traffic due to the project, including oil spills and light, air, and noise pollution. Plaintiffs forfeited these claims by failing to raise them during the notice-and-comment period. Nevertheless, the court addressed the merits of those arguments and found:
  - The Corps did not act arbitrarily or capriciously with respect to its scoping analysis in the EA. As a result, it need not have considered ongoing day-to-day operational effects resulting from the expanded Terminal such as the risk of oil spills, impacts to seagrasses, noise and light pollution in neighboring communities, and climate change.

5

- o The Corps did not act arbitrarily or capriciously in its consideration of the cumulative impacts of dredging, filling, and construction-related activities.
- o The Corps did not act arbitrarily or capriciously with respect to its finding of no significant impact and decision not to publish an EIS.
- o The Corps's public interest review properly weighed the benefits and risks of the project and satisfied the CWA.
- o The Corp's analysis of cumulative impacts satisfied the CWA.

Based on these findings, the district court granted the Corps's and Enbridge's motions for summary judgment and denied Plaintiffs' motion for summary judgment.

Plaintiffs timely appealed. They limit their appeal to three issues:

(1) Whether the Corps acted arbitrarily and capriciously by failing to take a hard look at the cumulative impacts to seagrass beds and to the neighboring community due to increased vessel traffic and expanded operations at the [Enbridge] Terminal, as required by NEPA and the CWA;

(2) Whether the Corps acted arbitrarily and capriciously by failing to take a hard look at the cumulative impacts to the climate of the [Enbridge] Terminal expansion, as required by NEPA; and

(3) Whether the Corps acted arbitrarily and capriciously by failing to prepare an Environmental Impact Statement, as required by NEPA.

## II

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all

reasonable inferences in that party's favor."[2] Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."[4]

The Corps's actions under NEPA and the CWA are subject to review under the Administrative Procedure Act.[5] Under the APA, we will uphold an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[6] "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."[7] A decision is not arbitrary and capricious if the agency considers the appropriate factors and "articulates a rational relationship between the facts found and the choice made."[8]

## III

We begin with threshold issues raised by both the Corps and Enbridge as to whether Plaintiffs are procedurally foreclosed from making certain

---

[2] *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007).

[3] Fed. R. Civ. P. 56(a).

[4] *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

[5] *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, 894 F.3d 692, 696 (5th Cir. 2018).

[6] 5 U.S.C. § 706(2)(A).

[7] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[8] *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994) (citation omitted).

No. 23-40555

arguments on appeal. This inquiry involves analysis of both *waiver* and *forfeiture*, so we first distinguish between the two.

Though the terms are often used interchangeably, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."[9] A party *forfeits* a claim or argument by failing to raise it at the appropriate time. For example, forfeiture occurs when the party fails to raise a claim or argument in the first instance in the proceedings below or to adequately brief it on appeal.[10] A party *waives* a claim or argument by intentionally relinquishing its opportunity to raise it.[11] For example, waiver occurs when the party fails to pursue a claim beyond the complaint, including by ignoring the claim in its motion for summary judgment or not defending it in response to a dispositive motion.[12]

The district court held that Plaintiffs both waived and forfeited certain arguments. It concluded that Plaintiffs waived three arguments by failing to address them in their motion for summary judgment: (1) that the Corps violated NEPA and the CWA by failing to evaluate the purpose and need for the project; (2) that the Corps violated NEPA and the CWA by failing to analyze a reasonable range of alternatives to the projects; and (3) that the Corps acted arbitrarily and capriciously by failing to impose adequate measures to minimize adverse impacts on the environment. But the district court found that Plaintiffs did *not* waive arguments related to the Corps's

---

[9] *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).

[10] *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[11] *Fulford v. Lowe's Home Centers, L.L.C.*, 811 F. App'x 240, 242 (5th Cir. 2020).

[12] *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

public interest review and cumulative impacts analysis under the CWA. Nor did Plaintiffs waive arguments related to the Corps's scoping decision. Although the summary judgment motion "did not directly address the Corps'[s] scoping decision, [Plaintiffs] certainly did enough to avoid waiver" by arguing that NEPA required the Corps to study effects from increased vessel traffic. These increased-vessel-traffic arguments fall under the Corp's scoping decision, so the scoping issue wasn't waived.

Still, the district court found that Plaintiffs forfeited the increased-vessel-traffic arguments because they failed to raise them below during the notice-and-comment period. Plaintiffs were therefore barred from raising arguments that increased vessel traffic would increase the risk of oil spills and result in air, light, and noise pollution in the surrounding community.

On appeal, the Corps again argues that Plaintiffs' scoping arguments are waived because they did not raise them on summary judgment before the district court. Enbridge again argues that Plaintiffs' increased-vessel-traffic arguments are forfeited because they weren't raised in the notice-and-comment period. We disagree with the Corps and find that Plaintiffs' scoping arguments are not waived. But we agree with Enbridge and find that Plaintiffs' increased-vessel-traffic arguments are forfeited.

As to Plaintiffs' scoping arguments, the Corps contends that Plaintiffs waived them by failing to raise the scoping issue *before the district court* in the summary judgment briefing. But, as the district court held, Plaintiffs did address the scoping decision below, albeit not expressly. Plaintiffs argued before the district court that the Corps was required to analyze environmental effects from an increase in vessel traffic, such as risk of oil spills, damage to seagrass, impacts to neighboring communities, cumulative impacts, and climate change effects. The district court grouped all these arguments under the umbrella of the Corps's scoping decision and held that

No. 23-40555

"[w]hile [Plaintiffs] did not directly address the Corps' scoping decision, [they] certainly did enough to avoid waiver."[13] We agree with the district court that Plaintiffs' arguments about the effects of vessel traffic were sufficient to avoid waiver of the scoping issue in the district court. That Plaintiffs' arguments in the summary judgment briefing below didn't use the specific term "scoping" doesn't constitute a failure to raise the claim in the district court, and thus doesn't constitute waiver here on that basis.[14]

However, even if the *scoping* issue were not *waived*, we agree with the district court and Enbridge that Plaintiffs' related *increased-vessel-traffic* arguments were *forfeited* because Plaintiffs failed to raise these arguments during the notice-and-comment period.

The district court held that Plaintiffs "procedurally forfeited NEPA claims related to an alleged increase in vessel traffic and any resulting effects of that alleged increase" because Plaintiffs did not raise those issues during the notice-and-comment period.[15] Plaintiffs do not raise as an issue on appeal that the district court erred in so holding; accordingly, they have again forfeited the issue.

An appellant's brief must contain "a statement of the issues presented for review" as well as "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant

---

[13] *Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Eng'rs*, No. 2:21-CV-161, 2023 WL 6226387, at *18 (S.D. Tex. July 27, 2023).

[14] *United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017) (clarifying that "[f]ailure to raise a claim at the district court constitutes a forfeiture, not a waiver, of that right for the purposes of appeal" (quotation omitted)).

[15] *Indigenous Peoples of Coastal Bend*, 2023 WL 6226387, at *16.

relies."[16] Any issue not raised in appellant's opening brief is forfeited.[17] Plaintiffs' statement of issues doesn't present as an issue for review whether the district court's ruling on forfeiture as to increased-vessel-traffic arguments was in error.[18] Nor do they contest the district court's forfeiture finding elsewhere in their opening brief. They have thus forfeited the forfeiture issue.

Plaintiffs misunderstand what is necessary to challenge an adverse ruling. In their reply brief, Plaintiffs argue that "it was never *Plaintiffs'* argument that they themselves forfeited arguments as to increased vessel traffic nor was forfeiture ever one of Plaintiffs' claims at all," so they did not need to "plead other parties' defensive claims in their opening brief. They also assert that "the forfeiture argument is not one for Plaintiffs to preserve, it is one for Defendants to preserve."[19] But the Federal Rules of Appellate Procedure speak in terms of "issues," not arguments or claims.[20] When a district court makes an adverse ruling to a party, the party must raise it as an issue on appeal to contest it, regardless of which party made the argument or claim before the district court. Because Plaintiffs have not done so as to the district court's forfeiture holding, they have not successfully raised the issue of whether they forfeited arguments about vessel traffic on appeal.

Plaintiffs attempt to use their reply brief to raise the forfeiture issue and argue that they in fact did raise the increased-vessel-traffic arguments

---

[16] Fed R. App. P. 28(a)(5) & (8)(A).

[17] *Sec. & Exch. Comm'n v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (citing *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016)).

[18] Brief of Appellants at 1.

[19] Reply Brief of Appellants at 6–7.

[20] Fed R. App. P. 28(a)(5) & (8).

during the notice-and-comment period. Arguments raised for the first time in a reply brief need not be considered.[21]

In sum, the district court correctly held that Plaintiffs forfeited their arguments related to increased vessel traffic by failing to raise those arguments before the Corps during the notice-and-comment period. Plaintiffs fail to raise that holding as an issue on appeal. Accordingly, we need not review any of the arguments related to increased vessel traffic and the effects that flow from increased vessel traffic.

## IV

### A

We first address whether the Corps acted arbitrarily and capriciously by performing a deficient impacts assessment. Plaintiffs assert that the impacts analysis in the EA was deficient for four reasons: (1) it failed to assess impacts from increased vessel traffic on seagrass and the neighboring community, as required by NEPA; (2) it arbitrarily gave weight to benefits without assessing related costs; (3) it failed to assess incremental impacts of the project; and (4) it failed to assess cumulative impacts, in violation of the CWA.

#### 1

Plaintiffs argue that the Corps's impacts analysis was arbitrary and capricious because it considered only impacts from temporary construction and dredging and failed to consider the long-term, downstream impacts of operations at the expanded Terminal—that is, increased vessel traffic. As determined above, Plaintiffs' increased-vessel-traffic arguments are forfeited.

---

[21] *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003).

To the extent that Plaintiffs argue the Corps failed to address impacts such as oil spills and air, light, and noise pollution *independent* of increased vessel traffic, those arguments fail on their merits. The Corps explicitly acknowledged that oil spills were a "potential detrimental effect" of the project but found that the risk was "of negligible, or less, concern." The Corps also found that the expanded Terminal "actually reduces" pollutants by limiting the time vessels spend near shore.

2

Plaintiffs next argue that the Corps's impacts analysis was deficient because it arbitrarily gave weight to benefits without assessing related costs. Again, to the extent this argument flows from Plaintiffs' increased-vessel-traffic argument, it is forfeited. To the extent it refers to costs and benefits independent of the increased-vessel-traffic argument, the argument fails on the merits.

We address this argument in the context of both NEPA and the CWA.

For the proposition that analysis of costs must be coextensive with benefits under NEPA, Plaintiffs rely on our decision in *Sierra Club v. Sigler*.[22] There, we held that NEPA "mandates at least a broad, informal cost-benefit analysis by federal agencies of the economic, technical, and environmental costs and benefits of a particular action."[23] We further explained that "[i]f an agency were permitted to cite possible benefits in order to promote a project . . . yet avoid citation of accompanying costs . . . the cost-benefit

---

[22] 695 F.2d 957 (5th Cir. 1983).

[23] *Id.* at 978.

analysis in the EIS would be reduced to a sham."[24] Accordingly, we held that "once an EIS is required," the costs of "any claimed benefits" cannot "be ignored."[25]

*Sigler* is inapposite for two reasons. First, it only addressed what is required in an EIS. The analysis in an EA is far less onerous, so the same detailed weighing of costs and benefits is not required.[26] Second, *Sigler* is based on outdated NEPA regulations. For instance, when *Sigler* was decided in 1983, the Corps's NEPA-implementing regulations had not yet been promulgated.[27] And CEQ regulations promulgated post-*Sigler* struck the requirement for agencies to conduct a "worst-case analysis," which was a key component to the *Sigler* decision.[28] *Sigler* thus cannot guide us in determining whether the Corps's impacts analysis was deficient here.

Instead, we look to the Corps's NEPA-implementing regulations, which provide that "the scope of analysis used for analyzing both impacts and alternatives should be the same scope of analysis used for analyzing the benefits of a proposal."[29] The Eleventh Circuit has interpreted this requirement narrowly to mean that the Corps must evaluate only the effects proximately caused by the permitted action, even if it also discusses broader

---

[24] *Id.* at 979.

[25] *Id.*

[26] *See City of Dallas v. Hall*, 562 F.3d 712, 717 (5th Cir. 2009) (describing EA as "a rough cut, low-budget environmental impact statement designed to show whether a full-fledged environmental impact statement—which is very costly and time-consuming to prepare and has been the kiss of death to many a federal project—is necessary" (quotation omitted)).

[27] 33 C.F.R. Part 325, App'x B § (9)(b)(5)(d); 53 Fed. Reg. 3134 (Feb. 3, 1988).

[28] *Sigler*, 695 F.2d at 968–75; *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 354 (1989); 51 Fed. Reg. 15,618, 15,625 (Apr. 25, 1986).

[29] 33 C.F.R. Part 325, App'x B § 7(b)(3).

benefits of the project.[30] In *Center for Biological Diversity v. U.S. Army Corps of Engineers*, it held that the Corps need not evaluate environmental effects from the use of fertilization in commercial farming merely because the purpose of a dredge-and-fill project was to facilitate mining of phosphate ore, which would later be converted to phosphoric acid and used in fertilizer.[31] It reasoned that the Corps can describe benefits of the project "without following the chain of causation to the ends of the earth."[32] The analysis of costs and benefits should be coextensive to a point, but the Corps must be able to "explain the project or consider its public benefit without having to consider all manner of downstream effects way beyond the reasonable scope of required consideration[.]"[33]

We agree with the Eleventh Circuit and decline to interpret the Corps's NEPA regulations to the onerous extent Plaintiffs request. It was reasonable here for the Corps to explain the purpose of the project without coextensively evaluating costs.

The Corps's weighing of costs and benefits was also reasonable under the CWA. The Corps's CWA-implementing regulations require the Corps to perform a public interest review for every project. Under the public interest review, the Corps must consider "economics" and the "relative extent of the public and private need for the proposed structure or work."[34] The public interest review also requires the "benefits which reasonably may be expected to accrue from the proposal [to] be balanced against its

_____

[30] *See Ctr. for Biological Diversity*, 941 F.3d at 1302.

[31] *Id.* at 1301.

[32] *Id.*

[33] *Id.*

[34] 33 C.F.R. § 320.4(a)(1), (2)(i).

reasonably foreseeable detriments."[35] For a permit to issue, the Corps must conclude based on the public interest review "that the benefits of the proposed alteration outweigh the damage to the wetlands resource."[36] Nothing in the regulations requires the Corps to provide detailed data or analysis on benefits or costs of any particular impact.

The Corps's analysis was properly within the scope of the CWA public interest review. Under the "General Public Interest Review" heading of the EA, it considered that the Terminal would economically benefit Enbridge by accommodating larger vessels and that it would benefit the public by increasing energy availability. It explicitly weighed the project's benefits and detriments based on each public interest factor, taking into account comments received during the notice-and-comment period. And based on that public interest review, it made the specific finding that benefits of the project outweighed the detrimental impacts to wetlands.

Even if the Corps did use a wide scope of review to assess benefits in the CWA public interest analysis, that does not mean that it was obligated to evaluate costs coextensively in its NEPA analysis—"[b]y using one document to serve many functions, the Corps can limit the scope of its review in one part and expand it in another, as each regulatory task requires."[37] The Corps here looked at the appropriate scope in its analysis of costs and benefits under each statute.

_____

[35] *Id.* at § 320.4(a)(1).

[36] *Id.* at § 320.4(b)(4).

[37] *Kentuckians*, 746 F.3d at 712.

No. 23-40555

The Corps's assessment of the Terminal project's benefits and costs was consistent with both NEPA and CWA regulations and thus was not arbitrary and capricious.

3

Plaintiffs next argue that the Corps acted arbitrarily and capriciously by failing to assess the Terminal project's incremental and cumulative impacts in accordance with NEPA. Again, to the extent this argument flows from Plaintiffs' increased-vessel-traffic argument, as determined above, it is forfeited. To the extent it refers to impacts independent of the increased-vessel-traffic argument, the argument fails on the merits.

NEPA requires agencies to consider "each 'cumulative impact' of permitted actions, and that term is defined as 'the impact on the environment which results from the *incremental impact* of the action when added to other past, present, and reasonably foreseeable future actions." [38]

Plaintiffs argue that the district court erred in finding that the Corps's impacts analysis satisfied the NEPA incremental and cumulative impact analysis requirements. They assert that the district court wrongly interpreted our decision in *Atchafalaya Basinkeeper v. U.S. Army Corps of Engineers*, and, regardless, a recent unpublished decision rejected *Atchafalaya Basinkeeper*'s reasoning. [39] Plaintiffs misread both cases.

In *Atchafalaya Basinkeeper*, the Corps issued a permit for discharge of dredge or fill material into wetlands to construct an oil pipeline. [40] In the EA,

_____

[38] *Atchafalaya Basinkeeper*, 894 F.3d at 703 (quoting 40 C.F.R. § 1508.7 (emphasis added)).

[39] *See id*; *O'Reilly v. All State Fin. Co.*, No. 22-30608, 2023 WL 6635070, at *7 (5th Cir. Oct. 12, 2023).

[40] 894 F.3d at 695.

17

the Corps concluded that because of mitigation measures in the conditions and limitations of the permit, there would be no incremental impact.[41] It was sufficient for the NEPA impacts analysis that the Corps acknowledged extrinsic past impacts on the surrounding environment and explained how the project would not interfere with further efforts to restore the watershed.[42] We held that "a finding of no incremental impact relieves an agency of the necessity of extensive and ultimately uninformative discussion of cumulative effects pursuant to" NEPA.[43]

Our recent unpublished, nonprecedential decision in *O'Reilly v. All State Financial Co.* didn't narrow or change this holding. Rather, it agreed with *Atchafalaya Basinkeeper* that an extensive cumulative impact analysis is not necessary when the Corps determines the project will have no incremental impacts.[44] *O'Reilly* found the impacts analysis before it deficient, but its facts are distinguishable from *Atchafalaya Basinkeeper* and this case.  In *O'Reilly*, the Corps declined to undertake an extensive cumulative impacts analysis despite finding incremental impacts such as habitat loss, noise, and traffic, among other effects.[45] As the *O'Reilly* panel

---

[41] *Id.* at 704.

[42] *Id.*

[43] *Id.* (citing *Nw. Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1140–41 (9th Cir. 2006); *Northern Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1082 (9th Cir. 2011); *Louisiana Crawfish Producers Ass'n–West v. Rowan*, 463 F.3d 352, 359 (5th Cir. 2006)).

[44] *O'Reilly*, 2023 WL 6635070, at *6–7.

[45] *Id.* at *7.

itself noted, that made the case "distinguishable from *Atchafalaya Basinkeeper*, in which the EA found no incremental impact at all."[46]

Unlike in *O'Reilly*, here, like in *Atchafalaya Basinkeeper*, the Corps found *no significant incremental impacts*, and any such impacts were offset by mitigation efforts. The EA here identified direct and indirect impacts to aquatic resources and wetland habitats from dredging, as well as temporary impacts to water clarity and certain organism populations. But it determined that those impacts "will be temporary," organism populations will "re-establish . . . over time," and Enbridge's "mitigation plan will result in a no net loss of special aquatic site resources within this watershed." It also determined that "[c]ompensatory mitigation will be required to help offset the impacts to eliminate or minimize the proposed activity's incremental contribution to cumulative effects" and detailed the extensive mitigation plan elsewhere in the EA.

Because the Corps's analysis here concluded that mitigation efforts offset any incremental and cumulative impacts, acknowledged extrinsic past impacts on the surrounding environment, and explained how the project wouldn't interfere with further efforts to restore the watershed, the analysis aligns with the impacts analysis conducted in *Atchafalaya Basinkeeper*, which we held was compliant with NEPA.[47] As such, we agree with the district court that an extensive cumulative impact analysis was not required in this case.

Plaintiffs' remaining arguments essentially amount to a preference for more detail and more explanation in the NEPA cumulative-impacts-analysis portion of the EA. But even if more detail and explanation would have

_____

[46] *Id.*

[47] *Id.*

improved the EA, we "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[48] We find that the incremental and cumulative impacts analysis here, even if imperfect, sufficiently met the requirements of NEPA.

4

Plaintiffs next argue that the Corps acted arbitrarily and capriciously by failing to assess cumulative impacts in accordance with the CWA.

EPA's CWA guidelines require the Corps to predict "cumulative effects" attributable to the permitted discharge "to the extent reasonable and practical."[49] The Corps's own CWA-implementing regulations require a "[p]ublic interest review," which includes "evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest."[50] The Corps is also instructed to consider factors including "reasonably foreseeable detriments," "economics," and "general environmental concerns."[51] The regulations direct that the "permit will be granted unless the [Corps] determines that it would be contrary to the public interest."[52]

Plaintiffs argue that the district court erred in using *Atchafalaya Basinkeeper* as the "most on-point case for discussing the CWA's cumulative-impacts requirement"[53] because *Atchafalaya Basinkeeper* is

---

[48] *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotation marks and citation omitted).

[49] 40 C.F.R. § 230.11(g)(2).

[50] 33 C.F.R. § 320.4(a)(1).

[51] *Id.*

[52] *Id.*

[53] *Indigenous Peoples of Coastal Bend*, 2023 WL 6226387, at *33 n.28.

limited to NEPA and not the CWA. However, Plaintiffs concede that the CWA analysis is "functionally similar" to the NEPA cumulative impacts analysis. And, as the district court pointed out, in *Atchafalaya Basinkeeper* we discussed the EA in terms of the standards of "NEPA *and* the CWA."[54] So, the district court concluded that "[e]ither the Fifth Circuit's undiscussed CWA conclusion in *Atchafalaya* is a holding, which this Court is bound to follow, or the Fifth Circuit assumed that the Corps satisfied its CWA cumulative-effects requirement without squarely deciding the issue."[55] Either way, Plaintiffs fail to point to any meaningful difference in the analysis required under each statue. Because the analysis required is functionally similar and we have determined that the NEPA analysis was sufficient, we hold that the Corps did not act arbitrarily and capriciously in finding that the Terminal project complied with CWA's cumulative impact analysis requirements.

B

We turn next to whether the Corps acted arbitrarily and capriciously in its analysis of climate change.

The EA includes a section titled "Climate Change," where the Corps states that the Terminal project "likely will result in a negligible release of greenhouse gases into the atmosphere." The EA explains that impacts to aquatic resources, which can be sources or sinks of greenhouse gases, may cause "de minimis" impacts. And combustion of fossil fuels associated with operating construction equipment may cause further impacts, though the Corps has no authority to regulate those emissions. Overall, the EA "weighed" these minor sources of emissions "against national goals of

---

[54] *Atchafalaya Basinkeeper*, 894 F.3d at 696 (emphasis added).

[55] *Indigenous Peoples of Coastal Bend*, 2023 WL 6226387, at *33 n.28.

energy independence, national security, and economic development" and determined they were "not contrary to the public interest." The district court found that this analysis of the risks associated with greenhouse gas emissions satisfied the requirement under NEPA that the Corps take a "hard look" at indirect and cumulative impacts.[56]

As an initial matter, Plaintiffs fail to cite a single case from this circuit to support their argument that the analysis in the "Climate Change" section of the EA was insufficient. In our circuit, the Corps's obligations under NEPA to analyze climate change impacts are limited to "discussing relevant factors and explaining its decision."[57] The Corps's discussion of climate change here easily meets that standard.

Nevertheless, Plaintiffs, citing non-binding, out-of-circuit cases, assert that NEPA required the Corps to do more.[58] Specifically, they contend that the Corps needed to consider downstream impacts—that is, the emissions from the end-use of petroleum products that may be exported from the expanded Terminal. To the extent any other circuit has adopted such a requirement, we decline to do so here.

Regardless, Plaintiffs' climate change arguments all stem from their contention that increased vessel traffic will result in an increase in petroleum products exported from the Terminal and therefore an increase in fossil fuel

---

[56] *See Hall*, 562 F.3d at 717.

[57] *Atchafalaya Basinkeeper*, 894 F.3d at 698.

[58] *See* Brief of Appellants at 50–53 (citing, for example, *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1216 (9th Cir. 2018); *Border Power Plant Working Group v. Dep't of Energy*, 260 F.Supp.2d 1028–29 (S.D. Cal. 2003); *WildEarth Guardians v. Zinke*, 368 F. Supp 3d 41, 73 (D.D.C. 2019); *Utah Physicians for a Healthy Env't v. U.S. Bureau of Land Mgmt.*, 528 F. Supp.3d 1222 (D. Utah 2021); *Columbia Riverkeeper v. U.S. Army Corps. of Eng'rs*, No. 19-6071 RJB, 2020 WL 6874871 (W.D. Wash. Nov. 23, 2020); *Sierra Club v. FERC*, 867 F.3d 1357, 1372–75 (D.C. Cir. 2017)).

emissions. Because they have forfeited their increased-vessel-traffic arguments, we need not address them further here.

The Corps thus did not act arbitrarily or capriciously by limiting its analysis of climate change impacts to effects of the permitted dredging and filling activity.

C

Finally, we turn to whether the Corps acted arbitrarily and capriciously by conducting an EA and not an EIS. We agree with the district court that an EA was appropriate here.

"In complying with its responsibilities under NEPA, an agency must first prepare an EA to 'briefly' determine the potential environmental impacts of a proposed action."[59] In contrast to an EIS, "[a]n EA is a rough-cut, low-budget statement that evaluates whether the proposed action will significantly affect the quality of the human environment."[60] If the EA concludes that the action will significantly affect the environment, "the agency must prepare a more detailed [EIS]."[61] But if the EA concludes that the action would not significantly impact the environment, the agency need only issue a Finding of No Significant Impact.[62]

The CEQ regulations lay out ten factors that "agencies should consider" in determining significance.[63] We have held that "the factors listed in the regulation do not appear to be categorical rules that determine by

---

[59] *O'Reilly*, 2023 WL 6635070, at *1 (citation omitted).

[60] *Id.* (cleaned up).

[61] *Id.*

[62] *Id.* (citing 40 C.F.R. § 1508.13).

[63] *Id.*

themselves whether an impact is significant. Rather, . . . [a]n agency must only show that each factor was in some way addressed and evaluated."[64]

Here, "[a]fter reviewing the natural resource agency comments, the applicant's responses, the project plans, and the mitigation plan," the Corps determined that the Terminal project would not significantly impact the environment, so "an EIS is not required for the applicant's proposed dredging and facility improvements." The district court affirmed that conclusion. We agree.

Plaintiffs point to five factors in the CEQ regulations that, in their view, demonstrate a finding of significance and necessitate a full EIS. However, the Corps has easily shown that it adequately addressed and evaluated each of these factors in the EA.

First, the EA adequately evaluated "[t]he degree to which the effects on the quality of the human environment are likely to be highly controversial."[65] Plaintiffs assert that the Terminal expansion permit application was highly controversial because the Corps received 80 comment letters asking for a full EIS and because two other agencies, the EPA and Fish and Wildlife Service, expressed that it was not evident whether secondary and cumulative impacts were considered as to adjacent seagrasses. But we have held that the term "'controversial' is usually taken to mean more than some public opposition to a particular use—rather it requires a substantial dispute . . . as to the size, nature, or effect of the major federal action."[66] That comment letters requested an EIS does not indicate that

---

[64] *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 240 (5th Cir. 2006) (internal quotation marks and citation omitted).

[65] 40 C.F.R. § 1508.27(b)(4).

[66] *Coliseum Square*, 465 F.3d at 234 (internal quotation marks and citation omitted).

there was any particular "substantial dispute." And as to the comments from the EPA and FWS, those comments were addressed by the Corps. In particular, the Corps explained how the mitigation plan would address some of the concerns raised. No substantial dispute is apparent.

Second, the EA adequately evaluated the "[u]nique characteristics of the geographic area such as proximity to . . . wetlands . . . or ecologically critical areas."[67] Plaintiffs assert a significance finding was required under this factor because the expansion will impact seagrasses. However, the EA explicitly addresses this unique characteristic of the Terminal site in its description of the project and its impacts and in its responses to public comments. And, as Plaintiffs admit, the EA also contains a detailed plan to mitigate destruction of seagrasses.

Third, the EA adequately evaluated "[t]he degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks."[68] Plaintiffs assert in conclusory terms that the effects of the Terminal project are uncertain because Enbridge "supplied no information about vessel traffic and other critical issues." This vessel-traffic argument is forfeited, so we need not consider it.[69] Plaintiffs provide no further detail on the "other critical issues" they allege the Corps failed to address, so we deem that argument abandoned.[70]

Fourth, the EA adequately evaluated "[w]hether the action is related to other actions with individually insignificant but cumulatively significant

---

[67] 40 C.F.R. § 1508.27(b)(3).

[68] *Id*. at § 1508.27(b)(5).

[69] *See* Part III, *supra*.

[70] *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007) ("Inadequately briefed issues are deemed abandoned."), *superseded by rule on other grounds*.

impacts."[71] Plaintiffs assert that actions like the expansion of the Corpus Christi Ship Channel, combined with the Terminal expansion, will have cumulatively significant impacts. But, as we have already determined, the EA adequately considered cumulative impacts.[72] And its cumulative impacts analysis specifically considered the Corpus Christi Ship Channel expansion, as well as other dredging projects that have occurred in the past 60 years, and determined the impacts insignificant.

Finally, the EA adequately evaluated "[t]he degree to which the proposed action affects public health or safety."[73] Plaintiffs assert that the project affects public health and safety because of "its light and noise impacts on the neighboring community, the possibility of oil spills, and its clear connection to climate change." Again, most of these effects flow from increased vessel traffic, so they are part of the forfeited issues. But to the extent they are independent of the increased-vessel-traffic argument, the Corps did address these risks in the EA. Plaintiffs' conclusory argument on this factor fails to show that any public health and safety impacts were significant enough to require an EIS.

Because the EA addressed and evaluated each of these factors, the Corps did not act arbitrarily and capriciously in concluding that the Terminal expansion would not significantly affect the environment and in issuing an EA rather than an EIS.

_____

[71] 40 C.F.R. § 1508.27(b)(7).

[72] *See* Part IV.A.3, *supra*.

[73] 40 C.F.R. § 1508.27(b)(2).

V

We hold that the Corps did not violate NEPA, the CWA, or the APA in issuing the § 404 permit without conducting an EIS. Plaintiffs' arguments to the contrary are all unavailing.

We find that Plaintiffs forfeited any arguments related to impacts of increased vessel traffic at the Terminal by failing to raise them during the notice-and-comment period.

We find that the Corps did not act arbitrarily and capriciously in its environmental impacts analysis. Further, the Corps appropriately weighed benefits and costs of the Terminal project and assessed incremental and cumulative impacts consistent with NEPA and CWA requirements. The Corps's climate change analysis was also sufficient. Finally, we find that the Corps did not act arbitrarily and capriciously in issuing an EA and finding of no significant impact rather than a full EIS.

The judgment of the district court is AFFIRMED.