## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 30, 2012

No. 12-50374
Summary Calendar

Lyle W. Cayce
Clerk

ROBERT C. QUESADA,

Plaintiff - Appellant

v.

JANET NAPOLITANO, Secretary, Department of Homeland Security,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Robert Quesada challenges a district court's order enforcing his Title VII settlement with his employer. We affirm.

## I.

In January 2011, Robert Quesada filed a Title VII discrimination suit against his employer, the Secretary of the Department of Homeland Security. In July 2011, the district court entered a scheduling order that, among other things, required the parties to complete alternative dispute resolution. The

No. 12-50374

parties agreed to mediation, which occurred on March 12, 2012. Quesada attended the mediation together with his attorney. Toward the end of the negotiations, Quesada's attorney made an oral offer to settle all of Quesada's then-pending discrimination claims for $5000. As counsel for the Secretary was unable to obtain settlement authorization that day, Quesada's attorney agreed to hold the offer open pending the Secretary's approval.

On March 13, Quesada's attorney called opposing counsel to inquire whether the Secretary had accepted the settlement offer. On the following day, counsel for the Secretary sent an email to Quesada's attorney accepting the offer and memorializing the terms of the settlement.[1] On the same date, the Secretary notified the mediator that Quesada had settled his claims. In compliance with local rules, the mediator notified the district court, which entered an order setting forth deadlines for the parties to exchange settlement documents as well as a deadline to submit dismissal documents.

In accordance with the district court's order, counsel for the Secretary emailed Quesada's attorney a draft settlement agreement on March 20. After receiving no response, the Secretary's representative sent a follow-up email on March 21. Quesada's attorney responded that his client was reviewing the draft agreement. On March 22, Quesada's attorney emailed opposing counsel with certain suggested changes to the draft settlement documents.[2] Counsel for the Secretary responded on the same day indicating a willingness to address Quesada's concerns and asking for clarification.

---

[1] The email provided that "the agency has accepted [Quesada's] settlement offer of $5000 to settle all claims pending or that could be asserted up to the date of settlement."

[2] Specifically, Quesada asked the Secretary's representative to (1) remove the second sentence from paragraph 2, (2) identify with particularity the claims Quesada was releasing, and (3) add language indicating that Quesada was not releasing any claims against the Department of Veterans Affairs or Office of Workers Compensation Program.

No. 12-50374

No further communication took place between the parties until March 27, when the Secretary's representative sent an email to Quesada's attorney reminding him that the court's deadline for submission of the final settlement documents was imminent. On March 28, Quesada's attorney responded, asking whether the Secretary would be willing to join a motion for extension of the time to submit the settlement documents. Counsel for the Secretary indicated that the Secretary was amenable to an extension.

On March 29, Quesada's attorney inquired whether the Secretary would oppose a motion to reinstate the case on the district court's calendar. Counsel for the Secretary voiced strong opposition. On the same day, Quesada's attorney filed a motion to reinstate the case, which asserted that the parties had not reached an enforceable settlement agreement.[3] The Secretary immediately filed a response setting forth the above-referenced chronology of events and submitting various emails as proof that a valid agreement existed.

On March 30, the district court held a hearing to consider Quesada's motion to reinstate the case. At the hearing, Quesada's attorney confirmed that he had offered to settle the case at the March 12 mediation hearing, that he had agreed to hold the offer open until counsel for the Secretary received authorization, and that the Secretary had accepted the offer on March 14. Quesada's attorney also confirmed that he had voiced no objection to the Secretary's acceptance email, indicating that he believed the parties had reached an enforceable agreement-in-principal.

The court then addressed Quesada directly. Quesada asked his attorney to step down, claiming that the attorney had failed to communicate several key

---

[3] In the subsequent hearing before the district court, Quesada's attorney acknowledged that the motion to reinstate did not reflect his personal views, and that he believed the parties had reached an enforceable settlement.

3

settlement demands to the Secretary.[4]  Quesada also insisted that no valid settlement existed, reasoning that he had never signed any documentation. Counsel for the Secretary objected that Quesada had never previously mentioned any of the terms he now demanded, observing that the new terms materially departed from Quesada's original settlement offer.  Counsel for the Secretary urged the court to enforce the settlement as memorialized by the Secretary's acceptance email.

After thoroughly questioning all of the parties, the district court adopted the Secretary's position, concluding that Quesada's attorney had made an authorized settlement offer at the mediation negotiations, and that this offer did not include the additional terms Quesada presently demanded.  While the court "recognize[d] that [Quesada] has not signed on any piece of paper," it observed that this fact "does not preclude the existence of a settlement agreement."  On the same day, the court entered an order setting forth its conclusion and dismissing Quesada's case without prejudice.

## II.

On appeal, Quesada maintains that he is not party to an enforceable settlement with the Secretary.  Quesada does not dispute that his attorney communicated a settlement offer to the Secretary's representative on March 12, or that the Secretary's March 14 acceptance email reflects the terms of that offer.  Instead, Quesada argues that his attorney lacked the authority to enter into the settlement.  Though Quesada acknowledges that he was present at the

---

[4] Specifically, Quesada wanted the settlement agreement to provide that: (1) counsel for the Secretary had made improper threats during the mediation proceeding; (2) the Secretary would refrain from making improper threats in the future; (3) the Secretary would henceforth abide by its tri-bureau merit promotion guidelines, and (4) the Secretary would give Quesada priority consideration for any future promotions.

mediation negotiations, Quesada avers that this fact "does not mean that he was in agreement to any offer made by his former counsel." According to Quesada, "the record below reflects that Quesada objected to the initial settlement offer through his emails to [his attorney]." The emails, which Quesada introduced for the first time on appeal, are all time-stamped several days after the Secretary accepted the March 12 settlement offer.

We review a district court's order enforcing a settlement agreement for abuse of discretion.[5] The validity and enforcement of a Title VII settlement agreement are matters of federal law.[6] Under our precedents, "an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry."[7] Here, the record contains no evidence that Quesada objected to his attorney's settlement offer at any point during the mediation or before the Secretary accepted the offer.[8] Even assuming that we can consider the new emails Quesada introduced on appeal,[9] Quesada sent those emails to his attorney several days *after* the

---

[5] *Deville v. United States ex rel. Dep't of Veterans Affairs*, 202 F. App'x 761, 762 (5th Cir. 2006).

[6] *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

[7] *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984).

[8] Quesada misapprehends the burden of proof in this case, urging that the record lacks "any evidence to support the district court's or Secretary Napolitano's counsel's supposition that Quesada's former counsel had the authority to settle Quesada's discrimination claims." Under the law of this Circuit, Quesada's attorney had presumptive authority to settle Quesada's claims, and the burden is on *Quesada* to furnish evidence to the contrary. *See id.*

[9] *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.").

No. 12-50374

Secretary had accepted the March 12 settlement offer. Consequently, the emails have no bearing on the validity of the settlement.[10] We conclude that the district court did not abuse its discretion by finding that Quesada was bound by the terms of his attorney's settlement offer.

## III.

Quesada next claims that his counsel's defective representation violated his Fifth Amendment due process right to effective assistance of counsel. We have never held that the Fifth Amendment's due process guarantee is implicated by defective representation in Title VII proceedings and decline to do so in this case. We ought not in fairness leave the innuendo: Quesada has introduced no evidence to suggest that his attorney's representation was anything less than competent.

## IV.

We AFFIRM the judgment of the district court.

---

[10] As the district court's hearing suggests, the gravamen of Quesada's complaint is that he sent the emails to his attorney before signing any final settlement documents. However, under federal law, Title VII settlements need not be in writing. *Fulgence*, 662 F.2d at 1209. As Quesada's attorney had presumptive authority to extend the settlement offer at the mediation negotiations, the Secretary's acceptance of that offer was sufficient to create an enforceable agreement. *See id.* ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.").