# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 15, 2026

Lyle W. Cayce
Clerk

No. 25-50067

Ｕｎｉｔｅｄ Ｓｔａｔｅｓ ｏｆ Ａｍｅｒｉｃａ,

*Plaintiff—Appellee*,

*versus*

Ｄｏｎｇｘｉｎ Ｍａ; Ｍａ Ａｃｕｐｕｎｃｔｕｒｅ Ｃｅｎｔｅｒ, Ｐ.Ｃ.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-145

Before Ｋｉｎｇ, Ｈｉｇｇｉｎｓｏｎ, and Ｗｉｌｓｏｎ, *Circuit Judges*.

Ｓｔｅｐｈｅｎ Ａ. Ｈｉｇｇｉｎｓｏｎ, *Circuit Judge*:

The United States sued Defendants-Appellants Dr. Dongxin Ma and Ma Acupuncture PC (together, "the defendants") under the False Claims Act ("FCA") for allegedly defrauding the government by submitting inflated reimbursements for services provided to veterans. The parties reached significant agreement at pre-trial mediation, the validity of which is at issue here.

The district court concluded that the parties reached a final agreement at mediation, binding as to all of the settlement's material terms, and that the

No. 25-50067

additional terms in a subsequently submitted written agreement were immaterial. The central question on appeal is whether the district court abused its discretion in so concluding. Assessing the district court's decision under this deferential standard, we AFFIRM.

I.

A.

In February 2022, the United States sued Dr. Dongxin Ma and Ma Acupuncture PC under the False Claims Act for allegedly defrauding the government by submitting inflated bills for acupuncture services to the Department of Veterans Affairs ("VA"). The government alleged that the VA paid the defendants nearly $1.3 million to which they were not entitled. The government sought approximately $3.8 million in treble damages and nearly $20 million in civil penalties. The defendants denied liability, asserting that they lacked the scienter required under the statute and that their billing practices followed a "good-faith understanding" of permitted procedures.

On September 13, 2023, the parties attended mediation to fulfill an alternative dispute resolution ("ADR") requirement under the Western District of Texas's local rules. Patrick Keel—a private mediator in Austin, Texas, and former state district court judge—presided over the mediation. All parties were represented by counsel. Assistant U.S. Attorneys Thomas Parnham and Liane Noble represented the United States; Sean Teare represented Dr. Ma and his company. Dr. Ma also attended.

The parties do not dispute that Mr. Teare and counsel for the United States reached significant agreement at mediation. At a later hearing before the district court, Dr. Ma, Mr. Teare, and AUSA Parnham testified that the discussion at mediation included agreement about the following terms: (1) the defendants would pay the government $2.3 million over 42 months; (2)

2

the defendants would make an initial payment of $100,000; (3) the government would dismiss its lawsuit and release the civil claims it had asserted upon receipt of the settlement amount; (4) Dr. Ma would satisfy the payment obligations by making reasonable efforts to sell certain real property; and (5) the government could place liens on certain properties.

At the conclusion of the mediation, the parties met and shook hands. AUSA Parnham explained that he would send Mr. Teare a written agreement reflecting the settlement and incorporating other "standard terms." Dr. Ma did not tell the government that he disagreed, nor did Mr. Teare.

After the mediation, on September 19, 2023, the United States filed a notice of settlement, which provided:

> Plaintiff United States of America and defendants Dongxin Ma and Ma Acupuncture Center PC have settled this case at mediation. The parties must still draft and execute a written settlement agreement, and the defendants will have sixty (60) days from execution of the agreement to make an initial payment toward the settlement amount.

The government also attached the district court's ADR summary form, signed by Mr. Keel, which stated that the case had settled during the mediation.

Between September 21 and November 13, 2023, counsel for the parties corresponded via email. After multiple emails went ignored by Mr. Teare, on October 16, 2023, he and AUSA Parnham connected by phone. As memorialized in the subsequent email correspondence, the government confirmed that Mr. Teare stated that the defendants had no edits to the agreement. Despite multiple emails and phone calls in the month after, however, Mr. Teare never returned a signed agreement or otherwise contacted counsel for the government. Dr. Ma filed no objection or motion

No. 25-50067

with the district court expressing disagreement with the settlement or otherwise contesting the proposed settlement notice docketed months earlier.

B.

On November 18, 2023, the United States moved to enforce the written settlement agreement or, in the alternative, for summary judgment. Along with its motion, the government attached a written agreement, which it asserted contained the "terms agreed to at mediation as well as standard terms and conditions found in settlement agreements entered [into] by the Department of Justice." The parties do not dispute that this written agreement contained additional terms that were not discussed at mediation.

The defendants—represented by new counsel—opposed the motion to enforce. They argued that the proposed settlement agreement was invalid, and Dr. Ma filed an affidavit attesting that "whenever the mediator would leave the room," Dr. Ma would tell Mr. Teare that he "did not agree with what [Mr. Teare] and the mediator had been discussing and that there was no way [he] could agree to those terms."

The defendants also included a short affidavit from Mr. Teare, in which Mr. Teare averred that the parties agreed to the "general parameters . . . in terms of the amount and . . . time of payment, but the settlement agreement was not finalized." The defendants submitted correspondence between Dr. Ma and his former counsel, which showed that Dr. Ma had questions about the agreement, had difficulty reaching his counsel, learned after the mediation that his acupuncture insurance company would not cover the settlement, and had refinancing and tax questions.

In January 2024, the district court held an evidentiary hearing on the motion to enforce, at which it heard testimony from Dr. Ma, Mr. Teare, and AUSA Parnham. The witnesses agreed that, at mediation, they resolved how

4

much the defendants would pay the government and over what period, what the defendants' initial payment would be, that the government would dismiss the instant suit and release its civil claims, that Dr. Ma would make a reasonable effort to satisfy the payment obligations, and that, if he did not, the government could place liens on certain properties of his.

The witnesses disagreed, however, about whether any agreement reached at mediation was final and binding. Dr. Ma testified that he did not agree to anything in mediation and had only authorized his counsel to agree to a settlement of $1 million. He also testified that he was aware the government made an offer of $2.3 million, and that he told Mr. Teare that it was "impossible" to agree to the terms discussed. But he recalled that he never explicitly "disagree[d]" with them.

AUSA Parnham testified that the parties reached an "oral settlement" at mediation over the "material terms" of the agreement including that Dr. Ma would pay $2.3 million over 42 months under an agreed-upon payment schedule in exchange for dismissal of the case and a release. He also testified that Mr. Teare appeared to have authority to settle.

Mr. Teare testified to the terms the parties "agreed to" at mediation and contended that Dr. Ma was "aware" and did not object to the "parameters of what [the parties] believed would become a final agreement." Mr. Teare noted his familiarity with the additional terms the government described, admitting that they were "the standard and customary terms of settlement agreements."

Mr. Keel, the mediator, did not testify at the hearing. The district court sustained the defendants' objections to his testimony and the submission into evidence of a handwritten term sheet he had drafted.

Following the hearing, the defendants moved to supplement their opposition under Federal Rule of Civil Procedure 59 or, alternatively, Rule

No. 25-50067

60, seeking to raise two additional arguments. First, they wanted to argue that the written agreement was distinct from the alleged oral agreement reached at mediation and contained material terms never agreed to. Second, they sought to assert that the written agreement constituted a counteroffer that voided the alleged oral agreement reached at mediation.

C.

In July 2024, the district court denied the motion for leave to supplement and granted the motion to enforce mediation. Examining cases under federal and state contract law, the district court concluded that the parties had orally agreed to the material terms of the settlement at mediation. It also found that the additional terms—"standard and customary terms of settlement agreements"—were immaterial. The district court relied significantly on hearing testimony. It also emphasized Mr. Keel's experience as a mediator and his submission of the ADR summary.

Shortly thereafter, the defendants moved to amend the judgment, asking the district court to reverse its decision to enforce the settlement. For the first time, the defendants raised an anticipatory repudiation argument, asserting that the government had anticipatorily repudiated any final settlement reached at mediation by moving to enforce the settlement with the additional terms. In response, the government consented to an amended judgment incorporating only the material terms of the settlement orally agreed to at mediation. Given the government's compromise position, the district court granted the motion in part, concluding that although the defendants "fail[ed] to identify any intervening change in controlling law, newly available evidence, or clear error of law or fact that would warrant the relief they seek," it would enter an amended judgment incorporating only the material terms of the settlement orally agreed to at mediation.

The defendants timely appealed.

No. 25-50067

## II.

The district court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 31 U.S.C. § 3732(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

## III.

A district court has the inherent power to recognize, encourage, and enforce settlement agreements. *See Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020). We review the district court's exercise of this power for abuse of discretion. *Id.* A district court abuses its discretion if it: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc)).

Where, as here, a party's claims are premised on federal law, federal contract law governs the validity and enforceability of a purported settlement agreement. *See, e.g.*, *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018); *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (collecting cases). Since federal contract law is "largely indistinguishable from general contract principles under state common law," courts may "rely not only on federal cases, but also on treatises and state contract law cases to the extent [courts] find them persuasive." *Deepwater Horizon*, 786 F.3d at 354–55.

## IV.

We must determine whether the district court abused its discretion in concluding that the parties reached a binding, final agreement as to all material terms at mediation. Doing so requires us to address four separate issues: (A) whether the defendants' attorney had the authority to settle the

7

No. 25-50067

case (and whether the defendants have forfeited that argument); (B) whether the parties orally agreed to the settlement's material terms at mediation; (C) whether the parties understood that agreement to be final and binding; and (D) whether the government anticipatorily repudiated the oral agreement (and whether the defendants have forfeited that argument, too). We consider each in turn.

A.

First, we conclude that the defendants have forfeited their argument that the district court abused its discretion by failing to require the government to prove that the defendants' counsel had "specific authority to settle, treating the presumption of authority as conclusive, and disregarding unrebutted evidence that no such authority existed."

In the district court, the defendants argued that the settlement was invalid because Dr. Ma did not personally agree to the oral settlement agreement or give prior counsel authority to consent to a settlement above $1 million. Citing this court's caselaw, the district court concluded that, as the defendants' attorney of record, Mr. Teare had presumptive authority to settle the litigation, and that the defendants did not rebut that presumption. *See, e.g.*, *Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012); *Mid-South Towing*, 733 F.2d at 390. On appeal, the defendants do not contest this conclusion in their opening brief, instead raising it only on reply.[1]

---

[1] The defendants did attempt to make this argument in a now-stricken principal brief. Before the case reached a merits panel, the Clerk's Office deemed insufficient the defendants' initial principal brief for certain nonconformities. When the defendants refiled their corrected brief two weeks later, they also added new arguments to it, including about counsel's authority to settle. The United States then moved to strike. Our court granted the motion and denied the defendants' subsequent motion for reconsideration.

An initial brief "must contain a statement of the issues presented for review as well as appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 884 (5th Cir. 2025) (internal quotation marks omitted) (quoting Fed. R. App. P. 28(a)(5), (8)(A)). "Any issue not raised in appellant's opening brief is forfeited," *id.*, so an argument that comes in a reply brief "comes too late," *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 927 (5th Cir. 2008).

The defendants were clearly aware that the question of their counsel's authority to settle was important to the case. The district court made significant determinations related to their counsel and his presumptive authority under this court's precedent, as well as specific factual findings assessing the incongruence of Mr. Teare's and Dr. Ma's testimony. This case presents no extraordinary circumstance demanding we depart from our usual rules. *Contra United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014) (addressing an issue raised in an untimely filed reply brief because of several "extraordinary circumstances"). The defendants have forfeited this issue.

## B.

Second, we determine that the district court did not err in holding that the parties orally agreed to the settlement's material terms at mediation.

### i.

A contract "is unenforceable if it lacks material or essential terms." *Deepwater Horizon*, 786 F.3d at 357 & n.23 (describing "material" and "essential" as interchangeable). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Coe v. Chesapeake Expl.*, *L.L.C.*, 695 F.3d 311, 320 (5th

Cir. 2012) (citation omitted). Materiality is assessed on a case-by-case basis. *See id.* "Courts look not only at any relevant written agreements but also at the relationship of the parties, their course of dealings, and then answer the field- and fact-specific question of whether essential terms were sufficiently settled to find a contract." *APS Cap. Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272–73 (5th Cir. 2009).

We have found that material terms may be quite sparse. In *Deepwater Horizon*, a case applying federal contract law, we noted that "[c]ourts generally find there is agreement on all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." 786 F.3d at 357 n.26 (internal quotation marks and citation omitted). In that case, the plaintiff allegedly sustained injuries from the Deepwater Horizon explosion and submitted a claim to the entity tasked with victims' compensation. *Id.* at 348–49. The fund sent him a determination letter that provided an amount he would be paid if he released claims for bodily injury against BP. *See id.* at 349. BP claimed that the determination letter could not create a contract because it lacked material terms, "namely, the exact terms of the [r]elease." *Id.* at 356. Our court concluded that the determination letter was an enforceable contract because the "precise terms and specific language of the release [were] not necessarily material." *Id.* at 357; *see id.* at 357 n.26.

Here, the district court concluded that the terms addressed at mediation encompassed all the material terms. Based on the hearing testimony, it found that the parties determined the amount the defendants would pay overall ($2.3 million) and initially ($100,000), and over what period of time (42 months). They resolved how such payments would be made (through Dr. Ma's reasonable efforts to sell property) and a mechanism for enforcement (the government's ability to place liens on certain

properties). And they agreed that the government would dismiss its lawsuit against the defendants, as well as any civil claims against them.

In the context of this settlement, it was not an abuse of discretion for the district court to conclude that these provided the essential parameters to create a deal.

ii.

Nor did the district court abuse its discretion in determining that the additional terms in the written agreement were immaterial.

We begin with a brief note about the defendants' arguments. Below, the district court assessed the materiality of the written agreement's terms to determine whether the written agreement itself should be enforced. On the government's concession, the district court amended its judgment to enforce "only the material terms of the settlement orally agreed to at mediation." Before our court, the defendants highlight five provisions of the written agreement. They do so not to contest the enforcement of the provisions, but rather to argue that they are material and, in turn, that the oral agreement reached at mediation did not encompass all material terms.

But the defendants point to no provision that leads us to question our conclusion that the district court did not abuse its discretion in holding the parties addressed all material terms at the mediation. We start with the written agreement's effective-date provision, which states the agreement will commence on the date of the last signature. Although the timing of an agreement is generally a material term, federal contract law requires no written agreements or signatures to form a valid agreement. *See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. Dec. 1981) (per curiam); *EEOC v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011). The fact that the written agreement included language specifying that the contract would be effective on the date of signature does not negate the parties' ability to

No. 25-50067

reach an enforceable settlement—including resolving the material term of timing—at mediation. That is just what the district court stressed in finding that the parties orally agreed to a 42-month payment term.

Next, we look at the written provision reserving the government's right to pursue criminal and tax claims. The defendants argue that this clause undermines a "central assumption" that the settlement represented a "full and final resolution of the underlying dispute." But the district court concluded the parties did agree to a release of the claims pertinent to the FCA dispute—the civil claim against Dr. Ma and his practice. Moreover, as the government notes, standard Justice Department policy requires settlements to be narrowly tailored to the "immediate subject matter of the claim" compromised. U.S. Dep't of Just., Just. Manual § 4-3.400 (2018), https://www.justice.gov/jm/jm-4-3000-compromising-and-closing [https://perma.cc/S7W2-DSBE]. The Justice Manual prohibits general releases because "it is not possible to know whether the debtor owes debts to other agencies." *Id.* And Mr. Teare testified that he understood the government planned to add its standard terms. Although release provisions are generally material, *see Deepwater Horizon*, 786 F.3d at 357, the parties agreed to the essential terms of the release at the mediation.

The defendants overread the other provisions they raise. The "broad waiver" of defenses they point to provides only a narrow waiver of certain defenses based on preclusion or timing that the defendants could attempt to assert if the settlement fell through and the government sought to litigate. The alleged limit on the defendants' ability to enter bankruptcy does not actually prohibit them from entering bankruptcy. It merely permits the government to seek the full value of its underlying claim in any bankruptcy proceeding as a creditor. And a clause of that bankruptcy provision allegedly granting the government a $23 million dollar default against the defendants does not permit the government to seek more than the agreed-to settlement

amount of $2.3 million *unless* the defendants were to seek bankruptcy. Further, even if we were to read these provisions as the defendants would like us to, we would not conclude that the district court abused its discretion in finding them immaterial. Our precedent dictates that there is agreement on "all the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Deepwater Horizon*, 786 F.3d at 357 n.26 (internal quotation marks and citation omitted). None of these additional terms impacts those essential aspects of the oral agreement.

We also credit the district court's assessment that each of these terms played no part in the settlement discussions and that the defendants' counsel considered them "the standard and customary terms of settlement agreements." Finding the additional terms immaterial, the district court relied on our caselaw holding that an agreement covering all material terms could be followed by a written agreement offering significantly more detail. *See Deepwater Horizon*, 786 F.3d at 357–59; *see also Coe*, 695 F.3d at 320. It also found that the fact that the parties did not discuss the details fleshed out in the written agreement at the mediation to be an indication that the parties did not consider them material. We echo that intuition. Especially where, as here, the defendants' counsel understood that a subsequent written agreement would include additional, standard terms. The district court did not abuse its discretion in finding the written agreement's provisions immaterial.

## C.

Third, we conclude that the district court did not abuse its discretion in finding that the parties' oral agreement at mediation was final and binding.

As noted above, federal contract law does not require settlements to be reduced to writing. *See Fulgence*, 662 F.2d at 1209. An oral settlement "is

a valid and enforceable agreement even if it contemplates the parties signing a release at a later date unless the parties explicitly provide that a valid contract will not be formed until the parties execute a formal, finalized agreement." *Deepwater Horizon*, 786 F.3d at 355. Whether parties mutually assented to a contract is assessed on "objective evidence, not the private, undisclosed thoughts of the parties." *Penthol, L.L.C. v. Vertex Energy Operating, L.L.C.*, 149 F.4th 504, 512 n.6 (5th Cir. 2025) (citation omitted).

The district court determined that the oral agreement at mediation was final and binding despite the defendants' contention that they thought the agreement would not be until it was memorialized in writing and signed by all parties. The district court recognized that Mr. Teare believed the agreement would not be final until it was reduced to writing, but it found that understanding was mistaken. It concluded that the government's intent to be bound, combined with the parties' post-mediation conduct, confirmed the agreement's finality and binding nature.

We see no error in this determination, particularly considering our deferential standard of review. Counsel for the government testified that he understood that any agreement the parties reached at mediation would be binding. The parties concluded the mediation by shaking hands, and an experienced mediator subsequently submitted a form conveying that a settlement was reached. Mr. Teare and Dr. Ma's post-mediation conduct likewise conveyed they understood the oral agreement to be final. In the two months between mediation and the government's motion to enforce the settlement, after which the defendants had received the written agreement, the defendants never objected or otherwise responded to the notice of settlement or ADR summary on the docket to dispute that a settlement had been reached. They filed no response to the government's pending motion for summary judgment. And they raised no concern with government counsel.

No. 25-50067

The defendants seek to downplay the importance of their post-mediation conduct by arguing that the government needed to demonstrate that the parties explicitly agreed that "the terms discussed at mediation would be final and binding." As the government puts it, however, our caselaw sets up a "default rule" that silence indicates a settlement agreement is binding even without a written release. *See Fulgence*, 662 F.3d at 1209–10; *Deepwater Horizon*, 786 F.3d at 357. Substantial evidence supports the district court's conclusion that the parties did not "explicitly provide" that their settlement agreement would not become valid until the parties "execute[d] a formal, finalized agreement." *Deepwater Horizon*, 786 F.3d at 355. [2]

The district court did not abuse its discretion in determining that the oral agreement reached at mediation was final and binding. In reaching this conclusion, we do not endorse the parties' mediation as model practice. We merely conclude that, based on the law and evidence before it, the district court did not err in finding the oral agreement reached at mediation final and binding.

## D.

Finally, we find that the defendants have forfeited their ability to make an anticipatory repudiation argument because they did not raise it until the motion to amend the judgment and order. We have elsewhere held that arguments first raised in a Rule 59(e) motion to amend a judgment are forfeited on appeal. *See Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006); *Tr. Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1152 & n.16 (5th Cir. 1992); *Marseilles Homeowners Condo. Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d

---

[2] The defendants also contend that "[c]ourts have consistently declined to infer assent solely from post-mediation logistical planning," but that statement not only relies on a case that does not support that conclusion but also cites a nonexistent quote from that case. *See Deepwater Horizon*, 786 F.3d at 756–57.

1053, 1058 (5th Cir. 2008) (stating that a motion to alter or amend a judgment "cannot be used to raise arguments that could, and should, have been made before the judgment issued" (citation omitted)). That rule is excepted only where a party can demonstrate extraordinary circumstances. *See State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir.2009). Such circumstances exist where "the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *Id.* (citation omitted).

The defendants do not meet this standard. To start, they do not acknowledge that an issue raised in a motion to amend a judgment should not be addressed on appeal. (Nor, however, does the government.) Further, this court has provided that "whether an anticipatory repudiation has occurred[] is normally a factual issue," not a legal one. *Louis Dreyfus Corp. v. Brown*, 709 F.2d 898, 900 (5th Cir. 1983); *accord* 23 WILLISTON ON CONTRACTS § 63:45 (4th ed. 2026) ("[W]hether an anticipatory repudiation of a contract has occurred is a question of fact."). A limited "exception applies where the repudiation is in writing, *and* where the terms are unambiguous, in which case a court may resolve the issue of repudiation as a matter of law," 23 WILLISTON ON CONTRACTS § 63:45 (emphasis added) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)), or where the district court has addressed the merits of the argument, *see, e.g.*, *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 287 (5th Cir. 2009). The defendants have not demonstrated that they meet either and have forfeited their anticipatory repudiation argument.

## V.

For the foregoing reasons, the district court's order enforcing the settlement agreement is AFFIRMED.